

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

*F I L E D*

*APR 0 8 2008*

*Apr 8, 2008*

*JUDGE JOHN F. GRADY*
*United States District Court*

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 07 CR 857-2 |
| vs. ) | Judge John F. Grady |
| ) | |
| LAURA BARKALOW ) | |

## PLEA AGREEMENT

1.    This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant LAURA BARKALOW, and her attorney, CAROL A. BROOK, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.    The indictment in this case charges defendant with four counts of bank robbery, in violation of Title 18, United States Code, Section 2113(a).

3.    Defendant has read the charges against her contained in the indictment, and those charges have been fully explained to her by her attorney.

4.    Defendant fully understands the nature and elements of the crimes with which she has been charged.

### Charges to Which Defendant is Pleading Guilty

5.    By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Counts One, Two, and Three of the indictment. Counts One, Two and Three each charge defendant with bank robbery, in violation of Title 18, United States Code, Section 2113(a).

### Factual Basis

6.      Defendant will plead guilty because she is in fact guilty of the charges contained in Counts One, Two, and Three of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish her guilt beyond a reasonable doubt:

a.      With respect to Count One of the indictment, on or about June 7, 2006, at Chicago, in the Northern District of Illinois, Eastern Division, defendant LAURA BARKALOW ("BARKALOW"), by force and violence, and by intimidation, took from the person and presence of a bank teller, approximately $585.00 in United States currency belonging to and in the care, custody, control, management, and possession of North Community Bank, located at 5342 North Broadway Avenue, Chicago, Illinois, the deposits of which were then insured by the Federal Deposit Insurance Corporation ("FDIC"), in violation of Title 18, United States Code, Section 2113(a).

Specifically, on or about June 7, 2006, BARKALOW agreed with co-defendant OVERTIS SYKES ("SYKES") to rob the North Community Bank, located at 5342 North Broadway Avenue in Chicago, Illinois.  SYKES instructed BARKALOW to enter the bank without SYKES to determine the location of any security guard.  BARKALOW did so, and then met SYKES outside to tell him what she had seen.  SYKES and BARKALOW then agreed on a meeting location, and SYKES entered the bank without BARKALOW.  SYKES had previously directed BARKALOW to write a demand note stating, "Give me 100s, 50s, if you don't give it to me in 15 seconds, I have a gun."  BARKALOW then gave the demand

2

note to SYKES. BARKALOW is aware that, once inside the bank, SYKES approached a teller and handed her the demand note. The teller then took $585.00 from her cash drawer and placed it on the teller counter. SYKES took the money and walked out of the bank. SYKES met BARKALOW at the pre-arranged meeting location and they left the area.

        b.     With respect to Count Two of the indictment, on or about June 13, 2006, at Chicago, in the Northern District of Illinois, Eastern Division, BARKALOW, by force and violence, and by intimidation, took from the person and presence of a bank teller, approximately $895.00 in United States currency belonging to and in the care, custody, control, management, and possession of TCF Bank, located at 5516 North Clark Street, Chicago, Illinois, the deposits of which were then insured by the FDIC, in violation of Title 18, United States Code, Section 2113(a).

        Specifically, on or about June 13, 2006, BARKALOW agreed with SYKES to rob the TCF Bank, located at 5516 North Clark Street in Chicago, Illinois. SYKES instructed BARKALOW to enter the bank without SYKES to determine the location of any security guard. BARKALOW did so, and then met SYKES outside to tell him what she had seen. SYKES and BARKALOW then agreed on a meeting location, and SYKES entered the bank without BARKALOW. SYKES had previously directed BARKALOW to write a demand note stating, "This is a robbery. Give me loose bills. I have a gun. You have 15 seconds." BARKALOW then gave the demand note to SYKES. BARKALOW is aware that, once inside the BANK, SYKES approached a teller and handed her the demand note.

3

When the teller did not react immediately, SYKES said to her, "Hurry up. I have a gun."
The teller then took $895.00 from her cash drawer and placed it on the teller counter.
SYKES took the money and walked out of the bank. SYKES met BARKALOW at the pre-arranged meeting location and they left the area.

           c.      With respect to Count Three of the indictment, on or about June 15,
2006, at Chicago, in the Northern District of Illinois, Eastern Division, BARKALOW, by
force and violence, and by intimidation, took from the person and presence of a bank teller,
approximately $575.00 in United States currency belonging to and in the care, custody,
control, management, and possession of TCF Bank, located at 4355 North Sheridan Road,
Chicago, Illinois, the deposits of which were then insured by the FDIC, in violation of Title
18, United States Code, Section 2113(a).

           Specifically, on or about June 15, 2006, BARKALOW agreed with SYKES to
rob the TCF Bank, located at 4355 North Sheridan Road in Chicago, Illinois. SYKES
instructed BARKALOW to enter the bank without SYKES to determine the location of any
security guard. BARKALOW did so, and then met SYKES outside to tell him what she had
seen. SYKES and BARKALOW then agreed on a meeting location, and SYKES entered the
bank without BARKALOW. SYKES had previously directed BARKALOW to write a
demand note stating, "This is a robbery. Give me loose bills. I have a gun. You have 15
seconds." BARKALOW then gave the demand note to SYKES. BARKALOW is aware
that, once inside the bank, SYKES approached a teller and handed her the demand note. The

4

teller began to hand SYKES money from her cash drawer, but when she attempted to grab a dye pack, SYKES shook his head and waived his finger "no." The teller did not give SYKES the dye pack. SYKES took $575.00 and walked out of the bank. SYKES met BARKALOW at the pre-arranged meeting location and they left the area.

        d.      BARKALOW acknowledges that the deposits of each of the three banks described in Counts One, Two and Three of the indictment were insured by the FDIC when she committed each bank robbery.

        7.      Defendant, for purposes of computing her sentence under Guideline § 1B1.2, stipulates to having committed the following additional offenses:

        a.      On or about June 9, 2006, at Chicago, in the Northern District of Illinois, Eastern Division, BARKALOW, by force and violence, and by intimidation, took from the person and presence of a bank teller, approximately $260.00 in United States currency belonging to and in the care, custody, control, management, and possession of TCF Bank, located at 5600 North Kimball Avenue, Chicago, Illinois, the deposits of which were then insured by the FDIC, in violation of Title 18, United States Code, Section 2113(a).

        Specifically, on or about June 9, 2006, BARKALOW agreed with SYKES to rob the TCF Bank, located at 5600 North Kimball Avenue in Chicago, Illinois. SYKES instructed BARKALOW to enter the bank without SYKES to determine the location of any security guard. BARKALOW did so, and then met SYKES outside to tell him what she had seen. SYKES and BARKALOW then agreed on a meeting location, and SYKES entered the

5

bank without BARKALOW. SYKES had previously directed BARKALOW to write a demand note stating, "This is a robbery. Put the 50s and 100s on the counter. I have a gun. You have 15 seconds." BARKALOW then gave the demand note to SYKES. BARKALOW is aware that, once inside the bank, SYKES approached a teller and handed her the demand note. The teller then took $260.00 from her cash drawer and placed it on the teller counter. SYKES took the money and walked out of the bank. SYKES met BARKALOW at the pre-arranged meeting location and they left the area.

        b.     On or about June 10, 2006, at Chicago, in the Northern District of Illinois, Eastern Division, BARKALOW, by force and violence, and by intimidation, took from the person and presence of a bank teller, approximately $1,099.00 in United States currency belonging to and in the care, custody, control, management, and possession of TCF Bank, located at 4250 North Lincoln Avenue, Chicago, Illinois, the deposits of which were then insured by the FDIC, in violation of Title 18, United States Code, Section 2113(a).

        Specifically, on or about June 10, 2006, BARKALOW agreed with SYKES to rob the TCF Bank, located at 4250 North Lincoln Avenue in Chicago, Illinois. SYKES instructed BARKALOW to enter the bank without SYKES to determine the location of any security guard. BARKALOW did so, and then met SYKES outside to tell him what she had seen. SYKES and BARKALOW then agreed on a meeting location, and SYKES entered the bank without BARKALOW. SYKES had previously directed BARKALOW to write a demand note stating, "This is a robbery. Give me loose bills. I have a gun. You have 15

seconds." BARKALOW then gave the demand note to SYKES. BARKALOW is aware

that, once inside the bank, SYKES approached a teller and handed her the demand note. At

the same time, SYKES said to the teller, "I want your money." The teller then handed

SYKES a stack of money with a dye pack underneath. SYKES flipped over the money, saw

the dye pack, and shaking his head "no," said "I want the other money." The teller then

handed SYKES additional money, which he grabbed before leaving the bank. SYKES then

met BARKALOW at the pre-arranged meeting location and they left the area. In total, the

teller gave SYKES $1,099.00.

        c.     On or about June 11, 2006, at Chicago, in the Northern District of

Illinois, Eastern Division, BARKALOW, by force and violence, and by intimidation, took

from the person and presence of a bank teller, approximately $820.00 in United States

currency belonging to and in the care, custody, control, management, and possession of TCF

Bank, located at 5343 North Broadway Avenue, Chicago, Illinois, the deposits of which were

then insured by the FDIC, in violation of Title 18, United States Code, Section 2113(a).

        Specifically, on or about June 11, 2006, BARKALOW agreed with SYKES to

rob the TCF Bank, located at 5343 North Broadway Avenue in Chicago, Illinois. SYKES

instructed BARKALOW to enter the bank without SYKES to determine the location of any

security guard. BARKALOW did so, and then met SYKES outside to tell him what she had

seen. SYKES and BARKALOW then agreed on a meeting location, and SYKES entered the

bank without BARKALOW. SYKES had previously directed BARKALOW to write a

7

demand note stating, "This is a robbery. Loose bills only. I have a gun. You have 15 seconds." BARKALOW then gave the demand note to SYKES. BARKALOW is aware that, once inside the bank, SYKES approached a teller and handed him the demand note. The teller then took $820.00 from his cash drawer and handed it to SYKES. SYKES took the money and walked out of the bank. SYKES met BARKALOW at the pre-arranged meeting location and they left the area.

d.    On or about June 18, 2006, at Chicago, in the Northern District of Illinois, Eastern Division, BARKALOW, by force and violence, and by intimidation, took from the person and presence of a bank teller, approximately $2,125.00 in United States currency belonging to and in the care, custody, control, management, and possession of TCF Bank, located at 4660 West Irving Park Road, Chicago, Illinois, the deposits of which were then insured by the FDIC, in violation of Title 18, United States Code, Section 2113(a).

Specifically, on or about June 18, 2006, BARKALOW agreed with SYKES to rob the TCF Bank, located at 4660 West Irving Park Road in Chicago, Illinois. SYKES instructed BARKALOW to enter the bank without SYKES to determine the location of any security guard. BARKALOW did so, and then met SYKES outside to tell him what she had seen. SYKES and BARKALOW then agreed on a meeting location, and SYKES entered the bank without BARKALOW. SYKES had previously directed BARKALOW to write a demand note stating, "This is a robbery. Put the loose bills on the counter. I have a gun. You have 15 seconds." BARKALOW then gave the demand note to SYKES.

8

BARKALOW is aware that, once inside the bank, SYKES approached a teller and handed her the demand note. The teller handed SYKES $2,125.00 and a dye pack from her cash drawer. After telling the teller to "hurry up," SYKES took the money, placed the dye pack back on the teller counter, and walked out of the bank. SYKES met BARKALOW at the pre-arranged meeting location and they left the area.

  c.  BARKALOW acknowledges that the deposits of each of the four banks described in the four stipulated offenses were insured by the FDIC when she committed each bank robbery.

<b><u>Maximum Statutory Penalties</u></b>

  8. Defendant understands that the charges to which she is pleading guilty carry the following statutory penalties:

  a.  Counts One, Two and Three each carry a maximum sentence of 20 years' imprisonment, and a maximum fine of $250,000. Defendant further understands that with respect to Counts One, Two and Three, the judge also may impose a term of supervised release of not more than three years.

  b.  Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court. The Court also may order restitution to any persons as agreed by the parties.

9

c.      In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which she has pled guilty, in addition to any other penalty or restitution imposed.

d.      Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is 60 years' imprisonment. In addition, defendant is subject to a total maximum fine of $750,000, a period of supervised release, and special assessments totaling $300, in addition to any restitution ordered by the Court.

## Sentencing Guidelines Calculations

9.      Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

10.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.      **Applicable Guidelines**. The Sentencing Guidelines to be applied in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2007 Guideline Manual.

10

b.    **Offense Level Calculations.**

i.    <u>The June 7, 2006 bank robbery (Count One)</u>. The base offense level for this offense pursuant to Guideline § 2B3.1(a) is 20.  A 2-level increase is appropriate under Guideline § 2B3.1(b)(1) because defendant took the property of a financial institution. An additional 2-level increase is appropriate under Guideline § 2B3.1(b)(2)(F) because a threat of death was made.

ii.    <u>The June 13, 2006 bank robbery (Count Two)</u>.  The base offense level for this offense pursuant to Guideline § 2B3.1(a) is 20.  A 2-level increase is appropriate under Guideline § 2B3.1(b)(1) because defendant took the property of a financial institution.  An additional 2-level increase is appropriate under Guideline § 2B3.1(b)(2)(F) because a threat of death was made.

iii.    <u>The June 15, 2006 bank robbery (Count Three)</u>. The base offense level for this offense pursuant to Guideline § 2B3.1(a) is 20.  A 2-level increase is appropriate under Guideline § 2B3.1(b)(1) because defendant took the property of a financial institution.  An additional 2-level increase is appropriate under Guideline § 2B3.1(b)(2)(F) because a threat of death was made.

iv.    <u>The June 9, 2006 bank robbery (Stipulated Offense Conduct)</u>.  The base offense level for this offense pursuant to Guideline § 2B3.1(a) is 20. A 2-level increase is appropriate under Guideline § 2B3.1(b)(1) because defendant took the property of a

11

financial institution.    An additional 2-level increase is appropriate under Guideline §
2B3.1(b)(2)(F) because a threat of death was made.

    v. The June 10, 2006 bank robbery (Stipulated Offense Conduct).    The
base offense level for this offense pursuant to Guideline § 2B3.1(a) is 20.  A 2-level increase
is appropriate under Guideline § 2B3.1(b)(1) because defendant took the property of a
financial institution.    An additional 2-level increase is appropriate under Guideline §
2B3.1(b)(2)(F) because a threat of death was made.

    vi. The June 11, 2006 bank robbery (Stipulated Offense Conduct).    The
base offense level for this offense pursuant to Guideline § 2B3.1(a) is 20.  A 2-level increase
is appropriate under Guideline § 2B3.1(b)(1) because defendant took the property of a
financial institution.    An additional 2-level increase is appropriate under Guideline §
2B3.1(b)(2)(F) because a threat of death was made.

    vii. The June 18, 2006 bank robbery (Stipulated Offense Conduct).  The
base offense level for this offense pursuant to Guideline § 2B3.1(a) is 20.  A 2-level increase
is appropriate under Guideline § 2B3.1(b)(1) because defendant took the property of a
financial institution.    An additional 2-level increase is appropriate under Guideline §
2B3.1(b)(2)(F) because a threat of death was made.

    viii. Pursuant to Guideline § 3D1.2, the offenses of conviction and the
stipulated offenses are not grouped and should be treated as separate groups.  The group with
the highest offense level is level 24.

ix. Pursuant to Guideline § 3D1.4, the defendant receives 1 unit for each of the offenses enumerated in Counts One, Two and Three of the indictment. The defendant receives an additional 1 unit with respect to each stipulated offense. Consequently, the defendant receives a 5-level increase in her offense level which results in a combined offense level of 29.

x. Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for her criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for her actions within the meaning of Guideline § 3E1.l(a), including by furnishing the U.S. Attorney's Office and the Probation Office with all requested financial information relevant to her ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

xi. In accord with Guideline §3E1.1(b), defendant has timely notified the government of her intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline §3E1.l(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

13

c.    **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts known to the government and stipulated below, defendant's criminal history points equal 0 and defendant's criminal history category is I.

d.    **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 26, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory Sentencing Guidelines range of 63 to 78 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

e.    Defendant and her attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw her plea on the basis of the Court's rejection of these calculations.

14

f.    Both parties expressly acknowledge that this plea agreement is not governed by Fed.R.Crim.P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw her plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

11.    At the time of sentencing, each party shall be free to recommend to the Court whatever sentence it deems appropriate.

12.    It is understood by the parties that the sentencing judge is neither a party to nor bound by this Plea Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw her guilty plea.

13.    Regarding restitution, the parties acknowledge that the total amount of restitution owed to victims is $2,055.00, minus any credit for funds repaid prior to sentencing, and that pursuant to Title 18, United States Code, § 3663A, the Court must order defendant, together with any jointly liable co-defendants, to make full restitution in the

amount outstanding at the time of sentencing. Defendant also agrees to pay to victims, together with any jointly liable co-defendants, additional restitution totaling $4,304.00 arising from the stipulated offense conduct set forth above, pursuant to Title 18, United States Code, §§ 3663(a)(3) and 3664. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing.

14.     Defendant agrees to pay the special assessment of $300 at the time of sentencing with a check or money order payable to the Clerk of the U.S. District Court.

15.     After sentence has been imposed on the counts to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining count of the indictment as to this defendant.

### Presentence Investigation Report/Post-Sentence Supervision

16.     Defendant understands that the United States Attorney's Office in its submission to the Probation Department as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the United States Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against her, and related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing.

17.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the United States Probation Office, and the United States Attorney's Office regarding

16

all details of her financial circumstances, including her recent income tax returns as specified by the Probation Officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of her sentence for obstruction of justice under Guideline § 3Cl.l, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

18.    For the purpose of monitoring defendant's compliance with her obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the United States Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

19.    This Plea Agreement is entirely voluntary and represents the entire agreement

between the United States Attorney and defendant regarding defendant's criminal liability in case 07 CR 857.

20.     This Plea Agreement concerns criminal liability only.  Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity.  The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

21.     Defendant understands that by pleading guilty she surrenders certain rights, including the following:

a.     **Trial rights.**  Defendant has the right to persist in a plea of not guilty to the charges against her, and if she does, she would have the right to a public and speedy trial.

i.     The trial could be either a jury trial or a trial by the judge sitting without a jury.  Defendant has a right to a jury trial.  However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

18

ii.    If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and her attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.    If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict her unless, after hearing all the evidence, it was persuaded of her guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv.    If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.    At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and her attorney would be able to cross-examine them.

19

vi.    At a trial, defendant could present witnesses and other evidence in her own behalf. If the witnesses for defendant would not appear voluntarily, she could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.    At a trial, defendant would have a privilege against self-incrimination so that she could decline to testify, and no inference of guilt could be drawn from her refusal to testify. If defendant desired to do so, she could testify in her own behalf.

b.    **Appellate rights.** Defendant further understands she is waiving all appellate issues that might have been available if she had exercised her right to trial, and may only appeal the validity of this plea of guilty or the sentence imposed. Defendant understands that any appeal must be filed within 10 calendar days of the entry of the judgment of conviction.

c.    Defendant understands that by pleading guilty she is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to her, and the consequences of her waiver of those rights. Defendant understands that she has the right to have the criminal charges in the indictment brought within five years of the last of the alleged acts constituting the specified violations. By signing this document, defendant knowingly waives any right to have the charges in the indictment brought against her within the period established by the statute of limitations. Defendant also knowingly waives any defense or

20

claim based upon the statute of limitations or upon the timeliness with which the charges in the indictment were brought.

22.    By entering this plea of guilty, defendant also waives any and all right the defendant may have, pursuant to 18 U.S.C. §3600, to require DNA testing of any physical evidence in the possession of the Government. Defendant fully understands that, as a result of this waiver, any physical evidence in this case will not be preserved by the Government and will therefore not be available for DNA testing in the future.

## Other Terms

23.    Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

24.    Should defendant engage in additional criminal activity after she has pled guilty but prior to sentencing, defendant shall be considered to have breached this plea agreement, and the government at its option may void this Plea Agreement.

## Conclusion

25.    Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

26.    Defendant understands that her compliance with each part of this Plea Agreement extends throughout the period of her sentence, and failure to abide by any term

of the Agreement is a violation of the Agreement. Defendant further understands that in the event she violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

27.    Should the judge refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound thereto.

28.    Defendant and her attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

22

29.　　Defendant acknowledges that she has read this Plea Agreement and carefully reviewed each provision with her attorney.　Defendant further acknowledges that she understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _April 8, 2008_

_Marvi Plagul for PJF_
PATRICK J. FITZGERALD
United States Attorney

_Laura Barkalow_
LAURA BARKALOW
Defendant

_Tyler C. Murray_
TYLER C. MURRAY
Assistant U.S. Attorney

_Carol A. Brook_
CAROL A. BROOK
Attorney for Defendant